### In re NISBET'S WILL.

### CALLEN v. WRIGHT.

(Supreme Court, Appellate Division, First Department. June 3, 1910.)

1. GIFTS (§ 34*)—INTEREST PAID BY DONEE—EFFECT.

 A gift is not invalidated by the donee's agreement to pay interest on it during the donor's lifetime.

 [Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 68–71; Dec. Dig. § 34.*]

2. TRUSTS (§ 325*)—SETTLEMENT OF ACCOUNTS—EVIDENCE—WEIGHT.

 Evidence on settlement of a testamentary trustee's accounts held to show that money was paid to her daughter as an advancement from her personal estate, and not for the daughter's contingent interest under the will.

 [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 485; Dec. Dig. § 325.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Surrogate's Court, New York County.

In the matter of the settlement of Margaret M. Wright as trustee under James Nisbet's will. From a decree of settlement, Margaret E. Callen appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Godfrey Goldmark, for appellant.

Francis B. Wood, for respondent.

DOWLING, J. On January 3, 1886, James Nisbet died, leaving a last will and testament, whereof Margaret M. Wright was executrix, and under which she is testamentary trustee, and whereby a life estate in all his property was given and devised to his wife, Janet, with remainder to his three children Margaret, James, and Andrew. In case of the death of any of them before the decease of his wife, then his or her child or children should succeed to the parents' share; but, while the shares of James and Andrew were stated to be given to them absolutely, the share given to Margaret was for her life only. At her death her one-third share was to be divided among her surviving children, and, in case she died without children, then it was to go to her brothers or their issue. James Nisbet owned the premises 231 West Thirty-Third street, New York City, and under his will, his wife having died in March, 1886, his sons James and Andrew each then became seised of a one-third interest in said premises, and his daughter Margaret M. Wright became entitled to the life estate in the remaining one-third. Prior to January 16, 1902, she purchased the interest of her brothers in the premises, and thus became seised in fee of an undivided two-thirds interest therein and was the owner of the life estate in the other one-third. On or about January 16, 1902, she sold the premises for $27,000, which she deposited in a trust company in her individual name. Of this amount she was the absolute owner in her own right of $18,000, representing the value of an undivided two-thirds of the purchase price, and the remaining $9,000 was held by her in her representative capacity; she being entitled to the income therefrom for life. Being thus the owner of $18,000, she began in September, 1905, to make advances to her daughter, Mrs. Margaret E. Callen, which by February 27, 1906, amounted to $4,550. It is the contention of Mrs. Wright that these were payments procured to be made by her daughter's pleas of poverty and demands for her share of her grandfather's (James Nisbet's) money. In response to questions which were leading in the highest degree, but to which no objection was taken, she insisted that this was the sole reason why she had paid the sums of money to her daughter as amounts that would be coming to the latter when the mother died, as one of the remaindermen under the grandfather's will. Mrs. Wright had four children, all daughters. Mrs. Callen testified that her mother told her that, if she and her husband would buy the land, the mother would give her the money wherewith to build a house thereon; the daughter to pay interest on the sum during the mother's lifetime. This was actually done, the land was bought, the house was built, and the interest was paid to the mother

continuously. Joseph A. Callen corroborates his wife's testimony in these respects.

There was then received in evidence an agreement in writing under seal, dated November 20, 1907, between Margaret E. Callan and Margaret M. Wright, wherein was recited the prior gift by mother to daughter of the sum of $4,500 under a verbal agreement that the daughter would pay the mother 4 per cent. per annum upon said sum in semiannual payments during the latter's lifetime, and whereby the daughter covenanted to pay such interest on January 1st and July of each year, and whereby the mother "for herself, her heirs, executors and administrators, does covenant, promise and agree to and with the said Margaret E. Callen that she, the said Margaret M. Wright, intended to make a gift of the said $4,500 to the said Margaret E. Callen, and does hereby declare the same to have been a gift, subject, however, to the agreement to pay the sum of 4 per cent. per annum during the lifetime of the said Margaret M. Wright, and she does hereby further covenant, promise, and agree that upon her death her heirs, executors, and administrators shall not make any demand from her the said Margaret E. Callan for said sum of $4,500, nor shall she the said Margaret E. Callen be obliged to pay the said sum of $4,500 during the lifetime of the said Margaret M. Wright, nor shall she be obliged to account for or pay to the heirs, executors, administrators or assigns of the said Margaret M. Wright the said sum of $4,500."

It is not disputed that this sum of $4,500 is the same as that represented by the advances made to the daughter aggregating $4,550. The agreement is not attacked; it is not claimed to have been procured by fraud, duress, or undue influence; it is not even sought to be explained. It affords the most persuasive and complete corroboration of Mrs. Callen's testimony. The learned surrogate said he did not think the paper was material, but upon what ground is not indicated. Mrs. Wright had four daughters and a personal estate, in her possession, of $18,000 in cash. The proof is convincing that she made a gift to her daughter Mrs. Callen of approximately $4,500 which would be exactly one-fourth of her estate, and which gift was made by way of advancement. To assist the daughter in obtaining a home, she gave her, upon her buying the land, a sum equal to what the daughter would be entitled to receive as her share of the mother's individual estate, in case of intestacy, and quite apart from any interest in the James Nisbet estate of $9,000, wherein the mother still had her life estate. To carry out the idea of an advancement, the mother was to receive interest on the amount for her lifetime. The whole transaction, under the circumstances, was a perfectly natural one, which no one seems for years to have questioned. It is too late now to seek to distort it into a procurement by the daughter of more than her share of her grandfather's estate. The agreement to pay interest upon the gift during the mother's lifetime did not invalidate the gift. Doty v. Wilson, 47 N. Y. 580. The decision and decree, therefore, in so far as they attempt to hold that Mrs. Callen has been paid her share in the estate of James Nisbet, are erroneous, for the sums paid her were a gift from her mother by way of advancement from her personal estate, and Mrs. Callen has received none of the funds of the estate for her contingent interest therein or otherwise.

The trustee must be surcharged with the whole of $4,500 which she claims to have loaned to Mrs. Callen out of the trust estate, and be directed to invest the funds of the estate in the manner directed by the will.

The decree appealed from is reversed, with costs to the appellant against the respondent personally, and the proceeding remitted to the Surrogate's Court for further action in accordance herewith.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. I concur with Mr. Justice DOWLING. This was a voluntary proceeding instituted by Margaret M. Wright. The relator alleged that James Nisbet died leaving a last will and testament by which he devised to the petitioner during the term of her natural life certain real property in the city of New York with a remainder over to the issue of the petitioner. The said will contained a power of sale, and provided that in the event of the sale of the said property the executors should invest the proceeds of the one-third interest devised to the petitioner and pay over the income thereof to the petitioner during her natural life; that the real property was sold by the petitioner under a power of sale contained in the will, and there has come into her hands the proceeds of the sale, and she desired to render an account to the surrogate of her conduct as testamentary trustee of said undivided one-third interest in said real property. She submits an account in which it appears that, of the sum of $9,000, the proceeds of the real property, $4,500, had been deposited to her credit in certain savings banks in the city of New York, and $4,500 had been loaned to the petitioner's daughter during the life of the petitioner. By the will of Nisbet there was created a trust which arose upon the exercise of the power of sale by the executors, and the executors were required to invest the share of the testator's daughter, the petitioner, in New York City stock or upon mortgage of real estate, and to pay her the income for the rest of her life, with remainder over to her children. The testator appointed his wife and his three children executors. The wife appears to have died before the testator, and the petitioner was the only executor that qualified, and therefore when this trust came into existence the beneficiary was the sole trustee.

It is established that the same person cannot be at the same time trustee and beneficiary of the same identical interest. Woodward v. James, 115 N. Y. 346, 22 N. E. 150. The trust, however, did not fall, but was to be enforced by the court by the appointment of a trustee to carry it into effect. The petitioner having exercised the power of sale under the will, the proceeds of the real property which was to be held in trust came into her hands charged with the trust to carry out the provisions of the will. She had no power to use this money in any way except as directed in the will. Any attempt to pay it to one of the remaindermen upon any contract or agreement was a violation of the trust and made her liable to restore the money so loaned or advanced. So that, assuming that she had attempted to make such a loan as appears by her account, such loan was unauthorized. Her daughter to whom she made the loan was, according to the will, not to receive it

unless she survived her mother. She had not therefore a vested remainder, or at most it was a remainder subject to be divested by her death before her mother. The transaction, therefore, between the petitioner and her daughter, cannot in any way be considered as an investment of this trust fund, and I agree with Mr. Justice DOWLING that upon the evidence there was no such investment. The money advanced by the petitioner to her daughter is controlled by the agreement which was introduced in evidence, and had no relation to the fund that the petitioner had which was impressed with this trust and for which the petitioner is bound to account.